IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUKAINA SOMJI and FATIMA SOMJI,** : | **CIVIL ACTION** |
| Plaintiffss, : | |
| : | No.: 5:16-cv-06591-JLS |
| : | |
| : | |
| : | |
| **LEHIGH CARBON COMMUNITY** : | |
| **COLLEGE,** : | |
| Defendant. : | **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

This is an action for an award for damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Plaintiffs, Sukaina Somji and Fatima Somji (hereinafter "Plaintiffs"). Plaintiffs were employees of Defendant, Lehigh Carbon Community College (hereinafter "LCCC"), who have been harmed by the race-based discrimination and retaliatory practices as well as other improper conduct by LCCC.

This action is brought under Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.

### II. JURISDICTION AND VENUE

1. The jurisdiction and venue of this Court is invoked in this District pursuant to Title 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331 and 1391, 2201, 2202, 1343 and the claim is substantively based on Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. § 2000e, *et seq*.

2. Venue is proper in the Eastern District of Pennsylvania in that some or all of the events complained of herein occurred in Lehigh County, Pennsylvania.

3. As to the Title VII claims, Plaintiffs have invoked the procedure set forth in § 706(a) of Title VII.  On May 9, 2016, both Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was jointly filed with the Pennsylvania Human Relations Commission, against LCCC alleging, <u>inter alia</u>, race, national origin, and religion-based discrimination and retaliatory practices as well as other improper conduct by LCCC and its agents, servants, and representatives.

4. On September 23, 2016, a Notice of Right to Sue was issued by the EEOC as to Sukaina Somji.

5. This action was filed within ninety (90) days of receipt of said Notice.

6. On April 4, 2017, a Notice of Right to Sue was issued by the EEOC as to Fatima Somji.

7. This Amended Complaint has been filed within ninety (90) days of receipt of said Notice to add Fatima Somji as a Party-Plaintiff.

### III.  <u>PARTIES</u>

8. Plaintiff Sukaina Somjiis a 39 year old Tanzanian female who practices Islam and is a resident of the Commonwealth of Pennsylvania, residing in Allentown, Pennsylvania.

9. Plaintiff Fatima Somji is a 41 year old Tanzanian female who practices Islam and is a resident of the Commonwealth of Pennsylvania, residing in Allentown, Pennsylvania.

10. At all times relevant hereto, Plaintiffs have been a "person(s)" or "employee(s)" as defined under Title VII, and is subject to the provisions of the said Act.

11. LCCC is a Pennsylvania corporation located at 4525 Education Park Drive, Schnecksville, Lehigh County, Pennsylvania.

12. At all times relevant hereto, LCCC has been a "person" or "employer" as defined under Title VII, and is subject to the provisions of the said Act.

13. At all times relevant hereto, LCCC acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

14. LCCC has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiffs of race, national origin, and religion-based discrimination and retaliation.

15. At all relevant times herein, LCCC knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

IV. **CAUSES OF ACTION**

   a. **ALLEGATIONS AS TO SUKAINA SOMJI**

16. On or about November 17, 2014, Plaintiffs was hired by LCCC as a Financial Aid Assistant.

17. At all times relevant hereto, Plaintiffs was qualified for her position and performed her job duties in a proper and competent manner with no write-ups or misconduct.

18. Immediately upon being hired, Plaintiffs was harassed and subjected to discrimination by LCCC, through Marian Snyder, LCCC's Director of Financial Aid, Linda Sica, Financial Aid Assistant, and other employees due to her race, national origin, and religion.

19. Without limitation, Plaintiffs was exposed and subjected to race, national origin, and religion-based discrimination and a hostile work environment, including, but not

limited to the conduct set forth below.

20. This initial harassment and discriminatory conduct initially consisted of:

    a. Making derogatory comments to Plaintiffs about Islam and her religious beliefs and practices; and

    b. Making derogatory comments to Plaintiffs about her "stinky food" and prohibiting Plaintiffs from bringing said food to the office.

21. Plaintiffs took a religious pilgrimage to Iran and Iraq from February 6, 2015 through February 24, 2015.

22. Upon her return from this pilgrimage, Plaintiff was further exposed and subjected to race, national origin, and religion-based discrimination and a hostile work environment, including, but not limited to the conduct set forth below.

23. Specifically, this harassment and discriminatory conduct consisted of:

    a. Continuing to make derogatory comments to Plaintiff about Islam and her religious beliefs and practices;

    b. Continuing to make derogatory comments to Plaintiff about her "stinky food" and prohibiting Plaintiffs from bringing said food to the office;

    c. Criticizing Plaintiff for going on a religious pilgrimage to Iran and Iraq;

    d. Inquiring with Plaintiff about ISIS and other terrorist organizations;

    e. Monitoring Plaintiff's computer and computer history when she was on breaks or away from her computer, even though she had no history of misuse of her computer;

    f. Excluding Plaintiff from meetings and other work functions;

    g. Ignoring Plaintiff's e-mails and not meaningful communicating with Plaintiff;

and

h. Treating Plaintiff in a hostile manner.

24. LCCC treated Plaintiff in this disparate and discriminatory manner due to race, national origin, and religion.

25. Plaintiff repeatedly reported and complained of this harassment and discriminatory conduct to Snyder and Donna Williams, LCCC's Director of Human Resources, and objected to this harassment and discriminatory conduct as it took place.

26. However, LCCC, through Snyder and Williams, ignored and dismissed these complaints and refused to take any remedial action.

27. As a result of LCCC's refusal to take remedial action in response to Plaintiff's protected conduct, this harassment, discriminatory conduct, and disparate treatment continued unabated.

28. In retaliation of Plaintiff's protected conduct, LCCC began to criticize Plaintiff's work performance and issued Plaintiffs a negative performance review for baseless and manufactured reasons.

29. Plaintiff again engaged in protected conduct by reporting and complaining of this retaliatory and baseless criticism and negative performance review to Williams.

30. Williams again dismissed these complaints and refused to take any remedial action; instead, Williams further retaliated against Plaintiff by substantiating this retaliatory and baseless criticisms by making Plaintiff meet with Snyder to review her work and job duties, which in essence served as a Performance Improvement Plan.

31. As a result of Williams' refusal to take remedial action and her support and substantiation of this baseless and retaliatory criticisms, this discriminatory and

retaliatory conduct continued unabated; in fact, Snyder escalated her retaliatory conduct by refusing to meet with Plaintiff and denying Plaintiff any requested time off even though she had sufficient vacation and/or personal time.

32. On or about October 2, 2015, Plaintiff again reported this harassment and discriminatory and retaliatory conduct to Williams.

33. In response, Williams met with Plaintiff and Snyder about Plaintiff's repeated complaints of harassment, discrimination, and retaliation based on her race, national origin, and religion.

34. At this meeting, LCCC refused to address Plaintiff's repeated complaints of harassment, discrimination, and retaliation based on her race, national origin, and religion and instead disciplined her for engaging in this protected conduct by placing Plaintiff on a Performance Improvement Plan and extending her probation period.

35. These disciplinary actions were baseless, manufactured, and done in retaliation of Plaintiff's protected conduct as Plaintiff performed her job duties in a proper and competent manner with no write-ups or misconduct.

36. Shortly after the meeting, LCCC, through Snyder, disciplined Plaintiff a second time for taking a break from work as she was to be permitted to do.

37. Plaintiff immediately reported this retaliatory disciplinary action to Williams.

38. Williams instructed Plaintiff to avoid Snyder and refused to take any remedial action.

39. On or about October 19, 2015 after Plaintiff's grandfather passed away, Plaintiff requested to take 3 days bereavement leave as permitted under LCCC's policies.

40. LCCC, through Snyder, denied this requested and only permitted Plaintiff to take one day of bereavement in violation of its policies.  This was further retaliation against

Plaintiffs for engaging in protected conduct under Title VII.

41. As the aforementioned conduct continued and no remedial action was taken, Plaintiff reported this discriminatory and retaliatory conduct to Anne Bieber, LCCC's President, on or about October 30, 2015.

42. Over the next three weeks, Bieber alleged to have conducted an investigation into Plaintiff's complaint.

43. Bieber determined there was insufficient evidence to substantiate Plaintiff's complaints and did not take any remedial action; however, Bieber did rescind Plaintiff's PIP and the extension of her probationary period.

44. Because Bieber dismissed Plaintiff's complaints as "inconclusive" and did not take any remedial action, the discriminatory and retaliatory conduct continued.

45. For these reasons, LCCC created or permitted to exist a hostile work environment within which Plaintiffs was asked to function.

46. Plaintiff avers that LCCC created and/or permitted an intolerable and hostile work environment designed to interfere with her employment and to victimize her because she reported the illegal actions of LCCC employees by, but not limited to the following:

    a. Creating and fostering a work environment that was openly hostile toward Plaintiff; and

    b. Creating and fostering a work environment that was so openly hostile toward Plaintiff that when she complained about the race-based discrimination harassment and retaliation, she was ignored.

47. Because LCCC refused to take remedial action and would not take any measures to

protected Plaintiff from future discrimination, harassment, and retaliation, Plaintiff tendered her resignation to LCCC on or about April 25, 2016 due to hostile work environment based on this discrimination and retaliation and for failing to protect Plaintiffs from the above stated unlawful conduct.

    c. **ALLEGATIONS AS TO FATIMA SOMJI**

48. Paragraphs 1 through 47, inclusive, are incorporated by reference as if fully set forth at length herein.

49. Plaintiff was hired by Defendant on or about January 27, 2015 as a Switch Board Operator.

50. At all relevant times hereto, Plaintiff performed her duties in a proper and competent matter with no write-ups or misconduct.

51. At all relevant times hereto, Marian Snyder (Defendant's Director of Financial Aid), Linda Sica (Financial Aid), and Donna Williams (Director of Human Resources) were Plaintiff's immediate supervisors.

52. When Plaintiff was first hired by Defendant, Defendant, through Snyder, Sica, and other employees, began to harass and discriminate against Plaintiff due to her race, national origin, and religion.  This harassment and discriminatory conduct includes, but is not limited to:

    a. Making derogatory comments about Islam to Plaintiff;

    b. Inquiring with Plaintiff about ISIS and terrorist organizations;

    c. Monitoring Plaintiff's computer and computer history when she was on breaks;

    d. Criticizing Plaintiff for going on a pilgrimage (Haj);

      e. Excluding Plaintiff from meetings and ignoring her e-mails; and

      f. Treating Plaintiff in a hostile manner.

53. Plaintiff's sister, Plaintiff Sukaina Somji, was also employed by Defendant and was subjected to this same discriminatory conduct.

54. Sukaina Somji repeatedly reported this discriminatory and reported and complained to Snyder and Williams of this conduct as to both Plaintiffs.

55. However, their complaints were dismissed and no remedial action was taken.

56. As a result, this harassment, discrimination and retaliation continued unabated against both Plaintiff and Sukaina Somji.

57. Defendant then began to criticize Plaintiff's work and issued her a negative performance review for manufactured and baseless reasons.

58. Plaintiff objected to this discriminatory and retaliatory review and criticism to Williams.

59. Williams again took no action and merely told Plaintiff to meet with Snyder every two weeks to review her job duties.

60. Snyder then refused to hold these meetings. Snyder also refused to grant Plaintiff time off in retaliation for Plaintiff engaging in the aforementioned protected conduct.

61. On or about October 2, 2015, Plaintiff reported and complained of this conduct to Williams.

62. Defendant eventually held a meeting with Plaintiff, Williams, and Snyder in their Human Resources Department about Plaintiff's complaints.

63. Plaintiff requested to be moved to a different department because she was being subjected to such a hostile, discriminatory, and retaliatory environment.

64. Again, Plaintiff's complaints were dismissed and no remedial action was taken; in fact, Sukaina Somji was disciplined at this meeting.

65. Further, Snyder berated Plaintiff shortly after this meeting for taking a break with her sister.

66. Plaintiff immediately reported this incident to Williams who simply told Plaintiff to avoid Snyder.

67. Plaintiff followed up with Williams on October 5, 2015 but Williams informed Plaintiff she did not talk to Snyder yet, a clear indication she had again dismissed Plaintiff's complaint.

68. On or about October 19, 2015, Plaintiff's grandfather passed away and she requested bereavement time.

69. Williams only permitted Plaintiff to have one day of bereavement even though Defendant's policy permitted three days of bereavement time; this was another incident of discriminatory and retaliatory conduct.

70. As no remedial action was taken by Defendant and the discriminatory and retaliatory conduct continued, Plaintiff was constructively discharged on October 30, 2015 when she tendered her resignation effective November 2, 2015.

71. LCCC was responsible and liable for the conduct of its employees for subjecting Plaintiffs to race, national origin, and religion-based discrimination and retaliation while employed at LCCC and a hostile work environment based on this discrimination and retaliation and for failing to protect Plaintiffs from the above stated unlawful conduct.

72. As a direct result of the conduct of LCCC, Plaintiffs has been irrevocably damaged.

73. As a direct result of the conduct of LCCC, Plaintiffs has suffered and continues to suffer severe emotional, psychological, and physical distress.

74. As a direct result of LCCC's conduct, Plaintiffs has suffered a loss of earnings.

## COUNT I
## PLAINTIFFS v. LCCC
## VIOLATION OF TITLE VII

75. Paragraphs 1 through 74, inclusive, are incorporated by reference as if fully set forth at length herein.

76. Based on the foregoing, LCCC has engaged in unlawful practices in violation of Title VII. The said unlawful practices for which LCCC is liable to Plaintiffs include, but are not limited to, fostering and perpetuating a hostile and offensive work environment, retaliating against her because of her expressed opposition to offensive race, national origin, and religion related conduct in the work place, subjecting her to more onerous working conditions, and treating her in a disparate manner.

77. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by LCCC in violation of Title VII, Plaintiffs sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, plus back pay, front pay and interest due thereon.

## COUNT II
## PLAINTIFFS v. LCCC
## RETALIATION UNDER TITLE VII

78. Paragraphs 1 through 77, inclusive, are incorporated by reference as if fully set forth at length herein.

79. By the acts complained of, LCCC has retaliated against Plaintiffs for exercising her rights under Title VII, which constitutes a violation of Title VII.

80. LCCC's foregoing continued adverse employment actions and violations, including retaliation against Plaintiffs under circumstances giving rise to an inference of discrimination and retaliation, were taken without valid and just cause.

81. Plaintiffs is now suffering and will continue to suffer irreparable injury and monetary damages as a result of LCCC's retaliatory practices unless and until this Court grants relief.

**COUNT III
PLAINTIFFS v. LCCC
<u>NEGLIGENCE UNDER TITLE VII</u>**

82. Paragraphs 1 through 81, inclusive, are incorporated by reference as if fully set forth at length herein.

83. LCCC was negligent in the following respects:

    a. Failing to implement an effective, well-known and uniformly enforced policy against race-based discrimination and retaliation;

    b. Failing to properly investigate Plaintiff's complaints of race, national origin, and religion-based discrimination and retaliation;

    c. Failing to take any action reasonably calculated to remedy Plaintiff's complaints of race, national origin, and religion-based discrimination and retaliation;

    d. Failing to impose any discipline upon their employees who had engaged in race, national origin, and religion-based discrimination and retaliation;

    e. Failing to take reasonable actions to discover illegal race, national origin, and religion-based discrimination and retaliation by their employees; and

    f. Failing to take reasonable actions to prevent illegal race, national origin, and

religion -based discrimination and retaliation from taking place.

84. LCCC owed Plaintiffs a duty in all of the respects set forth in Paragraph 83, but failed to perform each of those duties as set forth above.

85. As a direct, reasonable, and foreseeable result of the negligence of LCCC, Plaintiffs suffered the injuries and damages set forth above.

## V. PRAYER FOR RELIEF

86. Plaintiffs repeats the allegations of paragraphs 1 through 90 of this Complaint as if set forth at length herein.

WHEREFORE, Plaintiffs request this Court to enter judgment in their favor and against LCCC and requests that this Court:

   a. Exercise jurisdiction over their claims;

   b. Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma, including, but not limited to, trauma endured in litigating this matter;

   c. Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

   d. Order LCCC compensate Plaintiffs with a rate of pay and other benefits and emoluments to employment, to which he would have been entitled, had he not been subject to unlawful discrimination;

   e. Order LCCC compensate Plaintiffs with an award of front pay, if appropriate;

   f. Order LCCC compensate Plaintiffs for the wages and other benefits and emoluments of employment lost, because of their unlawful conducts;

    g. Order LCCC pay to Plaintiffs compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment of life and other non-pecuniary losses as allowable;

    h. Order LCCC pay to Plaintiffs pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law; and

    i. The Court award such other relief as is deemed just and proper.

## VI. JURY DEMAND

Plaintiffs demand trial by jury.

                      HAHALIS & KOUNOUPIS, P.C.

                      By:/s/ *David L. Deratzian*
                         David L. Deratzian, Esquire
                         20 East Broad Street
                         Bethlehem, PA  18018
                         (610) 865-2608
                         Attorneys for Plaintiff

Dated:  May 11, 2017